A detailed recitation of the facts in this matter are set forth in our brief and will not be recounted again here. There are two issues before this court today, which I would like to argue, which serve to deprive the appellant of a fair trial. The issues are significant, the errors are not harmless, and the issues that we will be discussing today are one, that the government violated the appellant's Fifth Amendment right when it repetitively referenced Edwards' post-arrest and post-Miranda silence during both direct examination, cross-examination, and closing arguments, and secondly, that the district court abused its discretion by admitting statements made by appellant after co-conspirator Bruce was in custody. The third issue that we argued in our brief dealt with the minimal role as opposed to minor role reduction, and we will rely on our brief for that particular argument. The government comments relating to the appellant Edwards' post-Miranda silence constitutes misconduct and also constitutes reversible error. The record clearly indicates that the co-conspirator Thomas Bruce was detained and arrested at the Hartsfeld Airport in Atlanta in possession of a large quantity of cocaine. While at the Hartsfeld Airport, agents of the Drug Enforcement Administration were able to induce Mr. Bruce to- Those are the facts, aren't they, that you had indicated you weren't really going to get into? Yes, Your Honor, and the only reason- I'm not going through all of the trial and all of the witnesses, and certainly nothing that had occurred in St. Thomas. Has the government here virtually conceded the error so that where we are is whether or not the error was harmless? That's correct. The government has effectively conceded the Doyle error. It seemed that way to me in their brief. Would you concede that Edwards' explanation about his arrival at the hotel room seems rather implausible? Yes, Your Honor, it does. So with that in mind, explain for me, please, explain for the panel how the prejudice here, how there was prejudice caused to your client given that implausibility of his explanation. Well, the prejudice arises in several areas, Your Honor, but let's talk first about the story that he gave when he testified. Although there's no Third Circuit case on point, there is a Fifth Circuit case which is instructive and was cited in our brief, and that's Chapman v. United States, which is found at 547 Fed. 2nd, 1240, and I call the Court's attention to Head Note 6, which is found at page 1249. And there the Court, the Fifth Circuit, said, The results in these cases are easily harmonized. When the prosecution uses defendant's post-arrest silence to impeach an exculpatory story offered by a defendant at trial, and the prosecution directly links the implausibility of the exculpatory story to the defendant's ostensibly inconsistent act of remaining silent, reversible error results, even if the story is transparently frivolous. But you could argue that it's particularly harmful where the story is transparently frivolous. Pardon, Your Honor? You could argue that it's particularly harmful where the story is transparently frivolous. Well, we don't believe that the story was patently frivolous. The story was, Your Honor. But you conceded that it was, my word was implausible. You have conceded it was implausible. Your Honor, yeah. I believe you could say that it was implausible, but many explanations may be implausible and may also be true. But it was his explanation. And his explanation was, I'm a gopher. I've been hired by promoters of these rap and rock and reggae people to be effectively their gopher. I get calls. They tell me to go do something. I go to do it. He testified, I received a call that night to go to this hotel and pick up a suitcase. I went to the hotel. I picked up the suitcase. I didn't look at what was in it. That was the story. And then as the court continued in Chapman, when the prosecutor doesn't even directly tie the defendant's silence to his exculpatory story, when the prosecutor elicits the fact on direct examination and then even refrains from commenting on it or adverting to it again, and the jury is never told that such silence can be used for impeachment purposes, reversible error results if the exculpatory story is not totally implausible. Mr. Inman. Yes, Your Honor. I mean, doesn't this really come down to what is a straightforward test, at least in terms of the language of that test? And that is that if we're talking about harmless error here, all that has to be shown from your standpoint is that there was a reasonable possibility that the error contributed to the jury's verdict. I mean, isn't that what our focus ought to be? Yes, Your Honor. As a matter of fact, the case law is quite clear. And that's a Third Circuit case. That's Davis, I believe. Pardon, Your Honor? I believe that's VI v. Davis. Yes. And it's also Martinez. In Corey, which says, whether the guilty verdict actually rendered in the trial was surely unattributable to the error. In other words, the burden shifts to the prosecution or to the government to establish beyond a reasonable doubt that the constant reference to the silence  Here, what you really have is a one-on-one. There's no corroboration with regard to Mr. Bruce's story. The only evidence of knowledge or intent is Bruce's testimony that while in the room, which wasn't being surveilled, which had no surveillance equipment, which had no DEH implanted in a closet, There's no wire, there's no video, right? Nothing. In fact, the phone records don't even, and there are extensive phone logs here. He doesn't show up in any of those phone conversations. There are extensive phone logs here, phone logs, I guess, not taped conversations, but your client doesn't show up, his number doesn't show up in any of those. That's correct. There's nothing here other than Bruce's testimony that he opened the suitcase and that there was conversation with regard to the suitcase. But there's no corroboration. All the agents actually see in this particular case are Mr. Edwards coming into the hotel, going to the room, and coming out of the room with a closed suitcase. Thereafter, any text or any kind of meat that goes into it is allegedly the conversation that takes place in the room with the cooperating co-conspirator who is trying to work off a problem right then and there. So it's virtually impossible to call that kind of evidence overwhelming. All right, let me ask you also about the curative instruction. There was a curative instruction here, so to speak, was there not? So why in the defense view did that not alleviate the problem with the error? Well, first, under Curtis, even if you were to give a curative instruction, it doesn't necessarily solve the problem. But here we have an additional problem. Well, but Martinez clearly says that there may be no Doyle violation where the trial court sustains an objection to the improper question and provides a curative instruction. What was the timing of the curative instruction as well? Martinez says in the footnote is we reiterate the manifest importance of immediate curative instructions whenever a defendant's post-morandum warning silence is mentioned in the case. If Your Honor, bear with me for a second. Virtually every objection that was made by trial counsel with regard to did he say anything? Did he react? Sirick asked you when. Sirick asked you when. When was the instruction? The curative instruction, allegedly, is during the reading of the jury instructions. The jury is never informed that there was a curative instruction and, in fact, the court overruled the objection that was made during closing to the direct reference to the defendant's post-arrest silence. But then after that, the court apparently reconsidered it and did give an instruction. Is that right? Yes, but he never told the jury it was a curative instruction. He never told the jury He wouldn't have to use the magic words. The text of the instruction is not a particularly strong instruction but the text of the instruction does inform the jurors of the right to remain silent. That's correct, but under United States v. Waller he gave the wrong instruction. And that's found in 654 Fed Reporter 3rd. All right, so your position would be, number one, the instruction was late. Number two, it was either to use your word wrong or to use Chief Judge McKee's characterization it wasn't particularly strong. Under Waller, Waller says You're not answering questions. We're throwing you softballs and you don't even seem to notice they're softballs. You're on your script. You need to get off of that. Your Honor, I'm so used to getting beaten up in front of the court that I probably wouldn't be This is a tender-loving panel, let me assure you. Judge, I'm a Marlin fan and we just got a high school coach as our new manager. I wouldn't know a softball from a hardball. But your Honor is absolutely correct. The instruction was late. The instruction was wrong and the instruction didn't cure anything. I would suggest most respectfully the evidence was underwhelming and Mr. Edwards is entitled to a new trial. Okay, thank you. Did you reserve time? Did you reserve time for rebuttal? Yes, I reserved three minutes for rebuttal, I believe. Not suggesting that you take it, just asking because I wasn't sure if you reserved time. Mr. Jones? Good morning, Your Honor. It's Nelson Jones for the Appellee United States of America. As Judge Smith has indicated in the government's brief, we did concede error as far as Doyle. How long have you been, I've been coming down here for 20 years and I've seen you, maybe for not all 20, but you are a very experienced attorney and a very experienced prosecutor. How long have you been trying cases? In federal court, 24 and a half years. Why in the world would you one, ask the questions that you ask and then get into the closing argument, I could see maybe the question comes out inartfully or you're into the cross-examination so the question comes out about the what did he do when he opened the suitcase and was there any reaction, but then to get up in closing argument and jump up and down and dance on the Fifth Amendment silence, it boggles the mind. It's something I would expect from somebody right out of law school whose juices were flowing and he was so intent to make the jury realize well, there's no evidence, but would an innocent person remain silent in the face of all this evidence? Do you have a bad day? What happened to you? You clearly had a bad day. I had as bad a day as the defendant had. That's true. Clearly it's inexcusable. I don't try to make it make light of it. Well you do because you then argue that it's harmless error which is making light of it. You then argue that it's harmless error which seems to me to be making light of it. I'm not making light of the conduct of it as far as the actual conduct. I think that as I indicated in the brief, I believe that clearly it was error. There's no excuse for it. How could it not undermine our confidence in the jury's verdict? As Mr. Anton just said, the burden shifts to you to show that it played no role in the jury's verdict when there's no other evidence in Chapman that Mr. Anton talks about. The case there referred to a single reference I believe to the Fifth Amendment silence. Here you've got four references I think three during trial and then the closing argument which comes back and calls the jury's attention basically saying would an innocent person not say anything under these circumstances? How in the world could that not be harmful error? Basically because of the other evidence in the case, Your Honor. What other evidence? There was no other evidence. There was no other evidence, Your Honor. You had the evidence, first of all you had the defendant arriving at a hotel that was not scheduled for the initial meet. The only people that knew where the drug transaction was going to take place was the agents, Mr. Bruce, Mr. Samuel, and the defendant, Mr. Edwards, because the original hotel that was supposed to be used had been changed by the agents when Mr. Bruce had been arrested. So the only people that knew where the transaction would take place as I indicated were the agents, Mr. Bruce. But what if he was picking the drugs up for someone who was in fact involved in the conspiracy and they told Edwards of the change in the location which is basically what his theory of defense is, that he was a gopher and these other folks that he was running around doing errands for told him where to go. The problem there is that he didn't claim he had come there to pick up a suitcase. He claimed he came there to pick up a person, that is Mr. Bruce, to move him from the hotel that he was in, the Super 8, to another hotel. And that's when the cross-examination went into the fact that he had no reservations at any other hotel, he didn't know whether the other hotel had any rooms at all, and he didn't know who he was picking up. Mr. Jones, I, before I ask my question, will, not intending to pile on, but simply join Chief Judge McKee in his expression of concern as to what happened here and its inexcusability. Let me then ask you, because I'm still trying to figure out, what else is here other than a swearing contest, a credibility contest between Edwards and Bruce? Because if that's the case, it seems to me you've got a really, really tough road to show that this was harmless here. In addition to what I've just indicated to Judge McKee, you had the fact that the defendant, Mr. Bruce, had been told by Mr. Samuel that a person by name of Dredd would be coming to pick up the narcotics. Bruce testified that there was a knock at the door that the person identified himself as Dredd, and in fact during the examination of Mr. Edwards at trial, he admitted that he was known as Dredd, that that was his name. Additionally, you have the testimony concerning the fact that the defendant came out of the room, had the suitcase, was in possession of the six, what ended up being sham, keys of taken out of the suitcase. You had the fact that when Mr. Edwards arrived at the hotel, he went straight to the door where Mr. Bruce was located, that the only people that knew that Mr. Bruce was in that particular room was Mr. Samuel and the agents. So the only way that he would know that was if he had contact with Mr. Samuel to enter that, to go to that particular room. Additionally, Your Honor, we submit to the court that Mr. Bruce's testimony was clear. He didn't hesitate. He said Mr. Edwards came into the room, that his clothing was in the suitcase, that he took his clothing out of the suitcase, and he also indicated why he took his clothing out of the suitcase, that because during the first trip he made that the person who came to pick up the drugs had left the suitcase with his clothing. So he took his clothing out, opened the suitcase, showed Mr. Bruce, showed Mr. Edwards the contents of the suitcase. The suitcase was closed. Mr. Edwards left. But before that, there was a conversation between Mr. Edwards and Mr. Samuel in which Bruce asked Mr. Edwards at the conclusion of that conversation, how many are you supposed to get? And he indicated to him six. And that's exactly how many he left with. Let me turn to another matter. You've heard the questions and the answers of your colleague across the aisle here regarding the Court's instruction. The so-called curative instruction. Do you really think that curative instruction helps you in your effort to demonstrate to us that this was harmless error? It could have been stronger. I will admit it could have been stronger. The instruction could have been stronger. It could have been weaker. It could also have been weaker, correct. But the position the government has is that, yes, it was a curative instruction and we submit to the Court that it may not have been as strong as it could have been but it was sufficient under the law. Any idea why the Court initially overruled the objection? It's kind of amazing to me. You'll have to ask Judge Gomez. I have no knowledge of why he overruled the objection. What I will say is that whether Judge Gomez had overruled or sustained objection, it's on me. I'm the one that made this error. With respect to the I think the main thing with respect to whether the evidence is overwhelming goes to the point that Mr. Edwards went to precisely where the transaction was going to take place. The recording between Mr. Bruce and Mr. Samuel with respect to where the event was going to take place was extensive because it had conversations as far as trying to make a determination as though Mr. Samuel wasn't hearing clearly what the address was for the hotel. It was repeated over and over, Sullivan Road, College Park. Sullivan Road, College Park, the particular address, the particular hotel. Once again, the only people that knew that the events were taking place on Sullivan Road at College Park was the agents, the defendant, Mr. Bruce and Mr. Samuel.  Court that when you look at that as well as the facts as Mr. Bruce related in the bedroom as far as what took place, we submit to the Court that there was overwhelming evidence of his guilt. Unless the Court has any other questions, that concludes my report. Mr. Enten, you reserve time. I just heard, for example, with regard to the quality of the evidence, there's nothing other than Mr. Bruce's word for what occurs in the hotel room. There was a concession that my client received information from a third party, he named the third party, and he was told to go to this hotel, to go to that hotel room, and to get Mr. Bruce. So, I mean, the fact that he went where he admitted that he said he was told to go for the purpose for which he said, then becomes a credibility issue. And that's really the credibility of Bruce or the credibility of Mr. Edwards. And the jury, but the jury was entitled to draw a conclusion out of that. That's correct. And that's why the instruction was so bad. Because the instructions the Court gave sent to the jury that you could make a determination on credibility, both based on what the evidence was and what was omitted. And this Court has specifically said in prior cases that the use of the word omitted actually invites them to consider the fact that the defendant had been silent. It was just a very bad problem all around, included with the inconsistent rulings by the trial judge, when they had away the testimony between Bruce and that of Mr. Edwards. I don't think you can say beyond a reasonable doubt that the post-arrest silence didn't factor into that verdict. Which is... Yeah, I understand that. Remind me, did the defense counsel at the time the so-called curative instruction was given propose another instruction or object to that? No, Your Honor. The defense counsel never knew that a curative instruction was being given until after the instructions had already been given. No, I understand that. But then did he ask the judge to correct that? No, Your Honor, he did not. Is that a problem? I don't think it is because the curative instruction was never really a curative instruction because the jury was never informed that the objection should have been sustained and that they were to not to consider the argument made by Mr. Mr. Jones during his closing argument. So the curative instruction cured nothing. The jury had no idea that there was a curative instruction. It wasn't attached to anything. And as a result, you know, a failure to object there or even to suggest another instruction might have made a bad situation even worse. I thank you, Your Honor, for the time. Thank you, Mr. Antonin, Mr. Jones.